Hearing Date and Time: **January 13, 2016 at 2:00 PM**
Objection Deadline: **January 6, 2016 at 4:00 PM**

**RAVERT PLLC**
Gary O. Ravert
116 West 23 Street, Fifth Floor
New York, New York 10011
Tel: (646) 961-4770
Fax: (917) 677-5419

*Attorneys For 99 Corona Funding Associates*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>NISTHAUZ GROUP, INC.,<br><br>*Debtor-in-Possession*. | Chapter 11<br><br>Case No. 15-42231 (CEC) |

**NOTICE OF MOTION OF 99 CORONA FUNDING ASSOCIATES PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE TO CONVERT CASE**

**PLEASE TAKE NOTICE** that the attached motion entitled "MOTION OF 99 CORONA FUNDING ASSOCIATES PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE TO CONVERT CASE" (the "Motion"), will be heard before the Honorable Carla E. Craig, Chief United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York, 11201, on January 13, 2016 at 2:00 PM.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be filed with the Court and served on (i) the undersigned counsel, and (ii) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014, Attn: William E. Curtin, Esq., and William K. Harrington, Esq. in each case so as to be received no later than January 6, 2016 at 4:00 PM (New York). Any response must set forth

the grounds for and the facts supporting the response and must: (i) identify the response by the name of the responding party, (ii) indicate the hearing date on the upper right hand side of the objection, and (iii) bear the caption and case number of this case.

Dated: December 7, 2015                    RAVERT PLLC
       New York, New York

                                          By: /s/ Gary O. Ravert
                                                 Gary O. Ravert
                                                 116 West 23 Street, Fifth Floor
                                                 New York, New York 10011
                                                 Tel: (646) 961-4770
                                                 Direct Fax: (917) 677-5419

                                          *Attorneys For 99 Corona Funding Associates*

**RAVERT PLLC**
Gary O. Ravert
116 West 23 Street, Fifth Floor
New York, New York 10011
Tel: (646) 961-4770
Fax: (917) 677-5419

*Attorneys For 99 Corona Funding Associates*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: <br><br> NISTHAUZ GROUP, INC., <br><br> *Debtor-in-Possession*. | ) ) ) ) Chapter 11 ) ) Case No. 15-42231 (CEC) ) ) ) ) ) |

**MOTION OF 99 CORONA FUNDING ASSOCIATES BANK PURSUANT**
**TO SECTION 1112(b) OF THE BANKRUPTCY CODE TO CONVERT CASE**

TO THE HONORABLE CARLA E. CRAIG,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

99 Corona Funding Associates ("Corona"), by and through its counsel, hereby moves this court (the "Motion"), pursuant to section 1112(b) of title 11 of the United States Code (the "Bankruptcy Code") and rule 2002(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to convert the chapter 11 case of the above-captioned debtor (the "Debtor"), which case centers around that certain parcel of real property located at 40-23 99th Street, Corona, Queens, NY 11368 [Block 1608, Lot 52] (the "Property"). Corona holds a first priority mortgage on the Property. In support of the Motion, Corona respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The facts supporting this Motion are well known to this Court because they have been addressed at virtually every scheduled hearing in this case. The facts have only grown worse with time. In short, it is in the interest of creditors that these cases be converted to chapter 7 case at this time so that (i) the assets can be preserved for the benefit of creditors, something the Debtor's representative is apparently incapable or unwilling to do, and (ii) the substantial cash withdrawals by the Debtor's representative can be investigated.

2. Before getting to the practical challenges of this purported restructuring, the conduct of the Debtor's representative, Mr.Nisthauz, warrants some discussion. This case commenced on May 14, 2015. The day of the filing, Mr. Nisthauz withdrew $50,000 from the Debtor's bank account. (*See* Schedule of Financial Affairs ("SOFA") at Q. 23.) He vaguely claimed (in court through counsel) that such withdrawal was for a year's worth of work at the Property. At this point in time, it is unclear whether Mr. Nisthauz rendered any services at all for those funds, whether such funds were on account of antecedent debt, or whether reasonably equivalent value was exchanged by the estate to this insider. This very material cash withdrawal warrants an investigation by a chapter 7 trustee.

3. Second, the Debtor's very late filed operating reports indicate that Mr. Nisthauz continues to withdraw material portions of collected rents to pay himself. He continues to do this even though he pays a superintendent, pays for repairs as a separate line item, pays for gasoline for his car and pays his Visa bill with rents. The result of these withdrawals is zero dollars in net income for the estate. But for all of these withdrawals, the Debtor would have approximately $70,000 in the DIP bank account. Instead it maintains a near zero balance. Neither this Court nor Corona authorized the use and disbursement of the rents—Corona's cash collateral. This wrongful use of cash collateral is an independent ground for conversion.

4.  Third, Mr. Nistauz, through counsel, has represented to the Court that a refinance was imminent. Multiple times Corona and this Court were told that the Debtor was on the verge of a refinancing that would fund an exit plan. That never happened. To the contrary, postpetition debts have increased, including but not limited to the accrual of interest pursuant section 506(b) of the Bankruptcy Code.

5.  Fourth, Mr. Nisthauz is not acting as a fiduciary as he should be in a chapter 11 case with substantial creditors. He has represented (again through counsel) that he has been distracted from operating the Debtor as a result of the death of his father about a year ago. He was in apparently Ohio during the last hearing before this Court. While he is in Ohio, he is clearly not working for salary in New York to support himself nor can he be rendering services for, or bringing value to, the Debtor. A trustee can give the Debtor the attention it warrants in light of creditor claims.

6.  Next, the acts and omissions of the Debtor itself warrant conversion separate and apart from those of Mr. Nisthauz. First, up until a couple of days ago, the Debtor was behind on four monthly operating reports. It did not, as the Court directed, file the late reports within 7 days of the last hearing (held on October 21, 2105). Creditors should not have to wait for Court direction and wait for many months to review operating reports, especially in a single asset real estate case and when they raise the issues that these reports do. Instead of complying with the Court's direction, the Debtor filed all four of the late reports (July 2015 through October 2015) on December Friday, December 4, 2015, just a couple of days ago.

7.  The Debtor's exclusivity pursuant so section 1121(b) has expired and, as of the date hereof, no plan has been filed.

8.  The Debtor's operating reports reflect no savings, no reserves, and no net income, wholly or in part due to payments directed to an insider.

9. The Debtor's claims register reflects $880,014.33 in claims as of mid-November. A liquidation of the Property would likely yield enough to pay all such claims leaving equity with some recovery. Accordingly, conversion to chapter 7 would be beneficial to *all* parties.

10. On November 30, 2015, Corona had to again request from the Debtor proof of current insurance on the Property. On that date, Corona received yet another postpetition notice of cancellation of insurance. This insurance issue has been the source of a dialogue with the Debtor since the case began. This issue first arose this past summer and continues to be an issue when it should not be. Corona should not have to pursue the Debtor to maintain insurance as a chapter 11 Debtor.

11. Corona is not acting in haste here. This single asset real estate case has been pending for almost seven months and the material facts in support of conversion are indisputable. In fact, cause exists under numerous of the non-exclusive examples of cause under section 1112(b) of the Bankruptcy Code including substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, gross mismanagement of the estate, failure to maintain appropriate insurance that poses a risk to the estate, unauthorized use of cash collateral substantially harmful to one or more creditors, failure to comply with an order of the court, unexcused failure to satisfy timely any filing or reporting requirement established by this title, failure timely to pay taxes owed after the date of the order for relief, failure to file a disclosure statement or file a plan within the time fixed by this title, and failure to pay any fees or charges required under chapter 123 of title 28 (i.e., US Trustee fees).

12. Corona submits that at this point conversion is warranted.

## JURISDICTION AND VENUE

13. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

14. The statutory predicates for this Motion are § 1112(b) of the Bankruptcy Code and Bankruptcy Rule 2002.

## RELIEF REQUESTED

15. Corona hereby seeks conversion of this case pursuant to section 1112(b). Corona's main concern at this point is that (i) the assets are preserved for the benefit of creditors, and (ii) the substantial cash withdrawals by the Debtor's representative are investigated.

## CONVERSION

16. Cause exists to convert or dismiss this case pursuant to section 1112(b) of the Bankruptcy Code.

**Applicable Law**

Section 1112(b)

17. Section 1112(b) provides, in relevant part, that,

> (b) (1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104 (a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court *shall* convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b) (emphasis added).

18. Section 1112(b)(4) sets forth that which is included in the term "cause." Section 1112(b)(4) provides, in relevant part:

> (4) For purposes of this subsection, the term "cause" includes (in relevant part)—

>   (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
>   (B) gross mismanagement of the estate;
>
>   (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
>
>   (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
>
>   (E) failure to comply with an order of the court;
>
>   (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
>
>   \*\*\*
>
>   (I) failure timely to pay taxes owed after the date of the order for relief . . .;
>
>   (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
>
>   (K) failure to pay any fees or charges required under chapter 123 of title 28; [.]

11 U.S.C. §§ 1112(b).

19. Bankruptcy judges have wide discretion to determine whether cause exists to convert a case under § 1112(b). *In re Kholyavka*, 2008 WL 3887653, at \*5 (Bankr. E.D. Pa. Aug. 20, 2008) (quoting H. Rep. 595, 95th Cong., 1st Sess. 405 (1977)). "Once the movant has established cause, the burden shifts to the respondent to demonstrate by evidence the unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate." 7 COLLIER ON BANKRUPTCY ¶ 1112.05[1]. There are no unusual circumstances here.

**Substantial or Continuing Loss to or Diminution of the Estate**
**and the Absence of a Reasonable Likelihood of Rehabilitation**

20. Based on what is known to date, tens of thousands of dollars of funds, prepetition and postpetition, have been diverted to insiders causing a diminution of this estate. The operating reports reflect no net income and accruing water and sewer and real estate taxes only diminish the estate by greater amounts daily. The Debtor is not insuring the Property or at least is not doing so properly given the cancellation notices. With no exit financing arranged, no net income, and accumulating losses, exit financing is an illusory goal at best. Accordingly, there is an absence of a reasonable likelihood of rehabilitation. Moreover, Mr. Nisthauz, who should be governing the Debtor, does not even appear to be focusing on the Debtor's business and is instead spending substantial time in Ohio. This Court has been promised multiple times that a refinance was imminent and, instead, what has been shown here was nothing except diversion of estate assets, problematic insuring of the Property and a lack of exit strategy.

**Gross Mismanagement of the Estate**

21. For all of the reasons discussed immediately above and below, the Debtors' representative, Mr. Nisthauz, has grossly mismanaged this estate by neglect and wrongful diversion of estate assets for his personal benefit. Therefore, cause exists pursuant to 1112(b)(4)(B).

**Failure to Maintain Appropriate Insurance that Poses a Risk to the Estate**

22. Since July 15, 2015, Corona has had approximately 30 separate communications with or concerning the Debtor and its insurance coverage. They concerned (i) obtaining the policy certification, (ii) Corona being listed as an additional insured, and/or (iii) repeated notices of cancellation. As a result, appropriate current insurance coverage continues to be a problem in this case. As of November 30, 2015, the Debtor's insurance was yet again being cancelled

requiring Corona to pursue the Debtor to remedy the problem.  As of the date hereof, the Debtor's insurance will terminate on December 12, 2015.  This continuing lack of attention and prioritization of insurance threatens this estate and supports cause now exists under section 1112(b)(4)(C) for conversion.

**Unauthorized Use of Cash Collateral Substantially Harmful to One or More Creditors**

23.    The Debtor has been using cash collateral for wholly inappropriate purposes since the petition date.  While Corona does not object to the use of cash collateral to fund the reasonable costs of maintaining the Property and to pay adequate protection, it certainly objects to use of cash collateral for any other purposes including for personal purposes for which the Debtor has used rents.  These include substantial payments to Mr. Nisthauz, who apparently render little or no services for such funds, gasoline, a superintendent (on top of payments to Mr. Nisthauz), Visa card payments and numerous indecipherable charges showing up on the operating reports.  These diversions for non-Debtor purposes have diminished the estate. Therefore, cause exists pursuant to 1112(b)(4)(D).

**Failure to Comply with an Order of the Court**

24.    The Debtor has failed to keep up with filing of operating reports as specifically directed by the Court. Such direction had the force of order.  Therefore, cause exists pursuant to 1112(b)(4)(E).

**Failure to Satisfy Timely Any Filing or Reporting Requirement Established by This Title**

25.    Almost all of the operating reports in this case have been filed many months late. This in inexcusable considering this is a single asset real estate case and the Debtor's accounting is a very simple and straightforward matter, namely, rents and expenses.  The Debtor has not kept up with its monthly operating reports and the operating reports as filed lack sufficient information to evaluate the propriety of the Debtor's disbursements of cash collateral/estate

assets. To the extent they are disclosed, they strongly suggest improper diversion of estate assets. No non-Debtor financials have been disclosed. Therefore, cause exists pursuant to 1112(b)(4)(F).

**Failure Timely to Pay Taxes Owed After the Date of the Order for Relief**

26. The Debtor is behind on his real estate taxes, pre- and postpetition and is behind by some $160,000 in water and sewer charges pre- and postpetion. Further, there are 22 open Department of Buildings violations against the Property. Any one of those threaten this entire estate. Therefore, cause exists pursuant to 1112(b)(4)(I).

**Failure to File Disclosure Statement or Plan Within the Time Fixed by this Title**

27. The Debtor has not filed a plan in this case. Exclusivity terminated in this jointly administered case months ago. Therefore, cause exists pursuant to 1112(b)(4)(J).

**Failure to Pay Any Fees or Charges Required Under Chapter 123 of Title 28**

28. The Debtor has no net income in the operating reports that were filed in this case. Accordingly, it is unclear how the Debtor could be keeping up with U.S. Trustee's quarterly fees. To the best of Corona's knowledge, the Debtor is behind on those fees. Therefore, cause exists pursuant to 1112(b)(4)(K).

29. For all of the foregoing reasons, Corona submits that cause exists to convert this case to chapter 7. The Debtor simply cannot demonstrate here by a preponderance of the evidence the unusual circumstances that show that keeping this case in chapter 11 is in the best interests of creditors.

## NOTICE

30. Notice of this motion has been provided to (a) counsel to the Debtor, (b) the Office of the United States Trustee, (c) all creditors identified in the Debtor's schedules, (d) those non-moving parties who have filed a notice of appearance in this case, if any; and (e) the

state court receiver. Corona asserts that such notice is reasonable and no further notice is required.

## NO PRIOR REQUEST

31. No prior request for the relief sought in this Motion has been made to this or any other Court.

**WHEREFORE**, for all of the reasons stated herein, Corona respectfully requests that this Court grant this Motion and issue the attached order (i) converting this case; and (ii) granting Corona such other and further relief as the Court deems just and proper under the circumstances.

Dated: December 7, 2015  
       New York, New York

RAVERT PLLC

By: /s/ Gary O. Ravert  
    Gary O. Ravert  
    116 West 23 Street, Fifth Floor  
    New York, New York 10011  
    Tel: (646) 961-4770  
    Direct Fax: (917) 677-5419

*Attorneys For 99 Corona Funding Associates*

**EXHIBIT A**

[Back to NYCServ]  The Official New York City Web Site

# Property Tax | View Items

### Profile

| | | | |
|---|---|---|---|
| **Name(s):** | NISTHAUZ GROUP, INC. | **Mailing Address:** | 4023 99TH ST<br>CORONA, NY 11368-2222 |
| **Planned Payment Date:** | 12/07/2015 | **BBL:** | 4-01608-0052/0 |

To display additional details for the item, click  in the Details column. (A new window will open.)

### Charges as of Monday, Dec 7, 2015 08:23 AM

| # | Account Type / BBL | Account ID | Period Begin | Details | Amount Due |
|---|---|---|---|---|---|
| 1 | Housing-Financial Aid Lien<br>4-01608-0052/0 | | 09/11/2007 | 🛈 | 122,857.86 |
| 2 | Housing-Financial Aid Lien<br>4-01608-0052/0 | | 09/12/2007 | 🛈 | 30,170.46 |
| 3 | Finance-Property Tax<br>4-01608-0052/0 | | 01/01/2008 | 🛈 | 12,979.68 |
| 4 | Housing-Emergency Repair<br>4-01608-0052/0 | 0122733 | 10/19/2007 | 🛈 | 959.33 |
| 5 | Housing-Emergency Repair<br>4-01608-0052/0 | 0122733 | 10/21/2007 | 🛈 | 286.65 |
| 6 | Housing-Emergency Repair<br>4-01608-0052/0 | 0122733 | 10/22/2007 | 🛈 | 4,642.05 |
| 7 | Housing-Emergency Repair<br>4-01608-0052/0 | 0122733 | 10/20/2007 | 🛈 | 5,350.31 |
| 8 | Housing-Emergency Repair<br>4-01608-0052/0 | 0122733 | 01/24/2008 | 🛈 | 6,418.96 |
| 9 | Housing-Emergency Repair<br>4-01608-0052/0 | 0122733 | 02/21/2008 | 🛈 | 48.68 |
| 10 | Finance-Property Tax<br>4-01608-0052/0 | | 07/01/2008 | 🛈 | 12,814.24 |
| 11 | Housing-Emergency Repair<br>4-01608-0052/0 | 0122733 | 10/31/2007 | 🛈 | 961.79 |
| 12 | Housing-Emergency Repair<br>4-01608-0052/0 | 0122733 | 01/30/2008 | 🛈 | 4,915.62 |
| 13 | Housing-Rent Stabilization<br>4-01608-0052/0 | 864801 | 04/01/2007 | 🛈 | 150.23 |

| | | | | | |
|---|---|---|---|---|---|
| 14 | Finance-Additional Property<br>4-01608-0052/0 | | 01/01/2009 | 🛈 | 6,222.91 |
| 15 | Finance-Additional Property<br>4-01608-0052/0 | | 04/01/2009 | 🛈 | 6,086.34 |
| 16 | Finance-Property Tax<br>4-01608-0052/0 | | 07/01/2009 | 🛈 | 6,323.72 |
| 17 | Finance-Property Tax<br>4-01608-0052/0 | | 10/01/2009 | 🛈 | 6,181.90 |
| 18 | Housing-Emergency Repair<br>4-01608-0052/0 | 0122733 | 01/31/2008 | 🛈 | 458.57 |
| 19 | Finance-Property Tax<br>4-01608-0052/0 | | 01/01/2010 | 🛈 | 6,217.33 |
| 20 | Finance-Property Tax<br>4-01608-0052/0 | | 04/01/2010 | 🛈 | 6,080.89 |
| 21 | Finance-Property Tax<br>4-01608-0052/0 | | 07/01/2010 | 🛈 | 6,052.10 |
| 22 | Finance-Property Tax<br>4-01608-0052/0 | | 10/01/2010 | 🛈 | 5,916.38 |
| 23 | Finance-Property Tax<br>4-01608-0052/0 | | 01/01/2011 | 🛈 | 5,881.53 |
| 24 | Finance-Property Tax<br>4-01608-0052/0 | | 04/01/2011 | 🛈 | 5,752.46 |
| 25 | Finance-Property Tax<br>4-01608-0052/0 | | 07/01/2011 | 🛈 | 5,578.07 |
| 26 | Finance-Property Tax<br>4-01608-0052/0 | | 10/01/2011 | 🛈 | 5,452.97 |
| 27 | Finance-Property Tax<br>4-01608-0052/0 | | 01/01/2012 | 🛈 | 5,394.55 |
| 28 | Finance-Property Tax<br>4-01608-0052/0 | | 04/01/2012 | 🛈 | 5,274.87 |
| 29 | Finance-Property Tax<br>4-01608-0052/0 | | 07/01/2012 | 🛈 | 5,537.42 |
| 30 | Finance-Property Tax<br>4-01608-0052/0 | | 10/01/2012 | 🛈 | 5,413.24 |
| 31 | Finance-Property Tax<br>4-01608-0052/0 | | 01/01/2013 | 🛈 | 5,093.29 |
| 32 | Finance-Property Tax<br>4-01608-0052/0 | | 04/01/2013 | 🛈 | 4,981.53 |
| 33 | Finance-Property Tax<br>4-01608-0052/0 | | 07/01/2013 | 🛈 | 5,362.90 |
| 34 | Finance-Property Tax<br>4-01608-0052/0 | | 10/01/2013 | 🛈 | 5,242.63 |

| | | | | | |
|---|---|---|---|---|---|
| 35 | Finance-Property Tax<br>4-01608-0052/0 | | 01/01/2014 | ℹ️ | 5,097.07 |
| 36 | Finance-Property Tax<br>4-01608-0052/0 | | 04/01/2014 | ℹ️ | 4,985.22 |
| 37 | Multi Dwelling Registration Fee<br>4-01608-0052/0 | 000000408648 | 01/01/2014 | ℹ️ | 13.00 |
| 38 | Finance-Property Tax<br>4-01608-0052/0 | | 07/01/2014 | ℹ️ | 5,277.80 |
| 39 | Finance-Property Tax<br>4-01608-0052/0 | | 10/01/2014 | ℹ️ | 5,159.43 |
| 40 | Finance-Property Tax<br>4-01608-0052/0 | | 01/01/2015 | ℹ️ | 4,821.19 |
| 41 | Finance-Property Tax<br>4-01608-0052/0 | | 04/01/2015 | ℹ️ | 4,715.39 |
| 42 | Multi Dwelling Registration Fee<br>4-01608-0052/0 | 000000408648 | 01/01/2015 | ℹ️ | 13.00 |
| 43 | Health-Inspection<br>4-01608-0052/0 | | 04/08/2015 | ℹ️ | 97.06 |
| 44 | Finance-Property Tax<br>4-01608-0052/0 | | 07/01/2015 | ℹ️ | 4,869.56 |
| 45 | Finance-Property Tax<br>4-01608-0052/0 | | 10/01/2015 | ℹ️ | 4,760.36 |
| 46 | Finance-Property Tax<br>4-01608-0052/0 | | 01/01/2016 | ℹ️ | 4,673.87 |
| 47 | Finance-Property Tax<br>4-01608-0052/0 | | 04/01/2016 | ℹ️ | 4,657.98 |

| | Total Due | Amount to Pay |
|---|---|---|
| | | $366,202.39 |

Items and amounts might not reflect recent payments you have made. Check here to check the last payment received. If the information provided here is not accurate, please Contact Us. (A new window will open).

To pay now, search for your BBL at our Pay for Property Tax or Related Charges site.

[CANCEL]

Go to NYC.gov Home | Finance Home | Health | Consumer Affairs | Environmental Protection | Contact Us |
FAQs | Privacy Statement | Site Map | Search

Copyright ©2001 New York City D.O.F. All rights reserved. - Contact NYCServ (A new window will open).

## Water & Sewer Charges | Account Details

### AccountProfile

| | | | |
|---|---|---|---|
| **Name:** | NISTHAUZ GROUP, INC | **Account Number:** | 6000556300001 |
| **Address:** | 40 23 99 ST<br>FLUSHING, NY 11368-0000 | **Status:** | ACTIVE |
| **Borough:** | Queens | | |

### Water and Sewer Charges as of Sunday, Dec 6, 2015 07:24 PM

| | Description | Balance |
|---|---|---|
| 1 | Late Payment Charge | 47,926.11 |
| 2 | Utility | 121,206.24 |

Total: $169,132.35

Charges and amounts displayed above might not reflect payments made in the past few days.

Print




✉ CLICK HERE TO SIGN UP FOR BUILDINGS NEWS

## NYC Department of Buildings
## Property Profile Overview

| 40-23 99 STREET | | QUEENS   11368 | | BIN#  4040292 | |
|---|---|---|---|---|---|
| 99 STREET | 40-23 - 40-23 | Health Area | : 1100 | Tax Block | : 1608 |
| | | Census Tract | : 407 | Tax Lot | : 52 |
| | | Community Board | : 404 | Condo | : NO |
| | | Buildings on Lot | : 1 | Vacant | : NO |

**View DCP Addresses...**     **Browse Block**

**View Zoning Documents**     **View Challenge Results**     **Pre - BIS PA**     **View Certificates of Occupancy**

| | | | | |
|---|---|---|---|---|
| Cross Street(s): | ROOSEVELT AVENUE,  41 AVENUE | | | |
| DOB Special Place Name: | | | | |
| DOB Building Remarks: | | | | |
| Landmark Status: | | Special Status: | N/A | |
| Local Law: | NO | Loft Law: | NO | |
| SRO Restricted: | NO | TA Restricted: | NO | |
| UB Restricted: | NO | | | |
| Environmental Restrictions: | N/A | Grandfathered Sign: | NO | |
| Legal Adult Use: | NO | City Owned: | NO | |
| Additional BINs for Building: | NONE | | | |

| | |
|---|---|
| **Special District:** | UNKNOWN |

This property is not located in an area that may be affected by Tidal Wetlands, Freshwater Wetlands, Coastal Erosion Hazard Area, or Special Flood Hazard Area.  **Click here for more information**

**Department of Finance Building Classification:**     C1-WALK-UP APARTMENT

  **Please Note:** The Department of Finance's building classification information shows a building's tax status, which may not be the same as the legal use of the structure. To determine the legal use of a structure, research the records of the Department of Buildings.

| | Total | Open | |
|---|---|---|---|
| | | | **Elevator Records** |
| **Complaints** | 21 | 0 | **Electrical Applications** |
| **Violations-DOB** | 22 | 22 | **Permits In-Process / Issued** |
| Violations-ECB (DOB) | 0 | 0 | **Illuminated Signs Annual Permits** |
| Jobs/Filings | | 0 | **Plumbing Inspections** |
| **ARA / LAA Jobs** | | 1 | **Open Plumbing Jobs / Work Types** |
| Total Jobs | | 1 | **Facades** |
| | | | **Marquee Annual Permits** |
| **Actions** | | 2 | **Boiler Records** |
| **OR Enter Action Type:** [     ] | | | **DEP Boiler Information** |
| **OR Select from List:** [ Select... ⬍ ] | | | **Crane Information** |
| **AND** [ Show Actions ] | | | **After Hours Variance Permits** |

If you have any questions please review these Frequently Asked Questions, the Glossary, or call the 311 Citizen Service Center by dialing 311 or (212) NEW YORK outside of New York City.